**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KATIE SUE WELSH,

                Plaintiff,

v.

SETH PERRIER; FRED RADDE; MICHAEL J.
GROH; ALEXANDER G. MCDONALD;
PAULA DUGGAN VRAA; COLLEEN G. KING;
CHARLES WEBBER; CAROLINE H. LENNON;
ANDREW LAWRENCE HARRIS; CITY OF
SHAKOPEE, MINNESOTA; SCOUT COUNTY,
MINNESOTA; SHAKOPEE POLICE
DEPARTMENT; SCOTT COUNTY SHERIFF'S
OFFICE; and JOHN DOE 1–10,

                Defendants.

Civil No. 25-4609 (JRT/LIB)

**ORDER**

---

Katie Sue Welsh, 27350 County Highway 21, Detroit Lakes, MN 56501, *pro se*.

On December 11, 2025, Plaintiff Katie Sue Welsh filed a Complaint for Damages and Injunctive Relief Pursuant to 42 U.S.C. § 1983 (Docket No. 1 ("Complaint")) and an Application to Proceed *In Forma Pauperis* (Docket No. 2 ("IFP Application")).  The Court will dismiss much of this action because the Complaint does not state a claim for which relief can be granted.  The Court will, however, allow some of the claims to proceed, will grant Welsh's IFP Application, and will initiate service on the remaining Defendants.

**BACKGROUND**

Welsh alleges a broad conspiracy among law enforcement officials, prosecutors, state court judges, and a public defender to violate her constitutional rights during and after an April 2025 traffic stop. She brings this action mainly under 42 U.S.C. § 1983 and Minnesota state law. Her Complaint identifies 13 named defendants:

(1)  Seth Perrier, Shakopee Police Department (who conducted the traffic stop);

(2)  Fred Radde, Shakopee Police Department;

(3)–(4) Michael J. Groh and Alexander G. McDonald, assistant county attorneys for Scott County;

(5)–(8) Paula Duggan Vraa, Colleen G. King, Charles Webber, and Caroline H. Lennon, Minnesota district court judges;

(9)   Andrew Lawrence Harris, a public defender;

(10)  the City of Shakopee;

(11)  Scott County;

(12)  the "Shakopee Police Department"; and

(13)  the Scott County Sheriff's Office.[1]

Broadly speaking, Welsh alleges that the Defendants conspired to fabricate evidence, unlawfully arrest and detain her, maliciously prosecute her on false charges, deny her a speedy trial and effective counsel, and cover up their wrongdoing through judicial inaction and evidence spoliation.[2] She also claims that in July 2025, several

---

[1] Welsh also purports to sue 10 John Doe individuals, described as "Evidence custodians, court personnel, and other unknown conspirators." (Compl. at 1.)

[2] For clarity, the Court will present Welsh's specific factual allegations as necessary within the Analysis section below.

Defendants tried to trick her into pleading guilty by misrepresenting a felony plea agreement as a mere traffic violation disposition.[3]

The Complaint is 48 pages long and alleges 16 causes of action.[4]  (*See* Compl. ¶¶ 197–295.)  Counts I–X each allege presumed constitutional violations: false arrest (Count I); false imprisonment (Count II); malicious prosecution (Count III); fabrication of evidence (Count IV); *Brady* violations (Count V);[5] denial of speedy trial (Count VI); ineffective assistance of counsel (Count VII); conspiracy to deprive civil rights (Count VIII); denial of access to courts (Count IX); and spoliation of evidence (Count X).  (*See id.* ¶¶ 197–271.)  Welsh also claims that certain Defendants violated 18 U.S.C. § 242 (concerning deprivations of rights under color of law) (Count XI) and 18 U.S.C. § 1030 (part of the Computer Fraud and Abuse Act) (Count XII).  (*See id.* ¶¶ 272–86.)  She asserts *Monell* municipal liability claims[6] against the City of Shakopee and Scott County (Count XIII).  (*See id.* ¶¶ 287–90.)  She also asserts three claims under Minnesota law (Count XIV):

---

[3] Welsh states that the relevant state criminal case was dismissed in August 2025 without a conviction.  (*See* Compl. ¶¶ 146, 149.)

[4] The Complaint presents 14 counts, but Count XIV reflects three separate state law causes of action.  (*See id.* ¶¶ 291–95.)  Welsh alleges Counts I, IV, and XII against Perrier; Count II against Perrier and Radde; Count III against Perrier, Radde, Groh, and McDonald; Count V against Groh and McDonald; Count VI against Vraa, King, Groh, and McDonald; Count VII against Vraa and Harris; Count VIII and X against all Defendants; Count IX against "Court Reporters, Court Administration, John Does," Count XI against King, McDonald, and Harris; and Count XIII against City of Shakopee and Scott County.  (*Id.* ¶ 197–290.)  For Count XIV, Welsh does not specify the Defendants.  (*Id.* ¶ 291–295.)

[5] *Cf. Brady v. Maryland*, 373 U.S. 83 (1963).

[6] *Cf. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

false imprisonment, malicious prosecution, and intentional infliction of emotional distress

("IIED").  (*See id.* ¶¶ 287–95.)  For relief, she seeks damages (compensatory and punitive),

as well as various forms of injunctive and declaratory relief.  (*See id.* ¶¶ 45–46.)

**ANALYSIS**

**I.      Standards of Review**

Rather than pay this action's filing fee, Welsh submitted an application to proceed

*in forma pauperis* ("IFP").  (*See* IFP Application.)  As a financial matter, Welsh may qualify

for IFP status.  But under the federal statute governing IFP proceedings,

> [n]otwithstanding any filing fee, or any portion thereof, that may
> have been paid, the court shall dismiss [an IFP matter] at any time
> if the court determines that . . . the action . . . fails to state a claim
> on which relief may be granted; or seeks monetary relief against
> a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

When determining if a complaint states a claim on which a court may grant relief,

a district court accepts the complaint's factual allegations as true and draws all reasonable

inferences in the plaintiff's favor.  *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833,

836 (8th Cir. 2014).  A complaint's factual allegations need not be detailed, but they must

"raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007).  A complaint must "state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Whether

a pleading states a claim is a "context specific task," and a court must "draw on its judicial

experience and common sense."  *Id.* at 679.  Courts construe *pro se* complaints "liberally,"

but such pleadings must still allege enough facts to support the claims advanced. *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 742 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  Furthermore, under Rule 12(h)(3) of the Federal Rules of Civil Procedure, if a court determines "at any time that it lacks subject-matter jurisdiction," the court "must dismiss the action."

## II.    Judicial Immunity

The Court will first address certain individuals' immunities from the Complaint's claims.  To begin, absolute judicial immunity bars all of Welsh's claims against Judge Vraa, Judge King, Judge Webber, and Judge Lennon (the "Judicial Defendants"), so the Court will dismiss those claims.

The bulk of Welsh's claims against the Judicial Defendants arise under 42 U.S.C. § 1983.  But judges are generally immune from suit under § 1983 when performing judicial acts within the scope of their jurisdiction.  *See, e.g.*, *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (citing cases).  This immunity applies even if a plaintiff alleges that a judge acted maliciously, corruptly, or in error.  *Id.* at 11.

The conduct that Welsh ascribes to the Judicial Defendants includes refusing to rule on motions, denying substitute counsel, continuing proceedings after a speedy trial deadline, presiding over plea discussions, and setting bail.  (*See, e.g.*, Compl. ¶¶ 16–19, 56–63, 72–83, 101–12, 139, 185, 189, 236–37.)  All these events occurred during court proceedings in a criminal case in Scott County District Court.  The actions were plainly

judicial in nature and well within the Judicial Defendants' jurisdiction.  Because Judicial immunity applies,[7] the Court will dismiss with prejudice the Complaint's § 1983 claims against the Judicial Defendants.

To the extent that the Complaint seeks injunctive relief against the Judicial Defendants based on Welsh's § 1983 claims, § 1983 itself bars that relief.  Under § 1983, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.  The Complaint presents no relevant allegations concerning declaratory decrees or relief.  Thus, to the extent the Complaint seeks declaratory relief against the Judicial Defendants, the Court will dismiss those claims as well.  The Eighth Circuit generally restricts declaratory relief against judges to **prospective** declaratory relief.  *See, e.g.*, *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 756, 763–64 (8th Cir. 2019).  The declaratory relief sought here, however, is plainly **retrospective** and cannot be granted.  *See id.*

Finally, it is unclear whether Welsh means to press certain Minnesota state law claims against the Judicial Defendants; the relevant Count does not distinguish between Defendants.  (*See* Compl. ¶¶ 291–295.)  While federal judicial immunity applies to federal

---

[7] Welsh further asserts that the judges conspired with prosecutors and a public defender to deprive her of constitutional rights.  (*See, e.g.*, Compl. ¶¶ 1, 101–11, 183–96.)  The Complaint does not include well-pled factual allegations that support Welsh's conclusory assertions.  Even if it did, judicial immunity extends even to allegations that a judge conspired to issue an improper ruling.  *See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

claims, federal courts typically must apply state substantive law when addressing state law claims like negligence or emotional distress. *See, e.g.*, *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 624 n.9 (8th Cir. 2003); *cf. Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under this framework, the Judicial Defendants' immunity from Welsh's state law claims depends on Minnesota state law.

Minnesota's immunity standard is, however, virtually indistinguishable from the federal standard, protecting judges from civil liability even in cases of alleged error or improper motive. *See, e.g.*, *Myers ex rel. Myers v. Price*, 463 N.W.2d 773, 775 (Minn. Ct. App. 1990); *see also, e.g.*, Minn. Stat. § 3.736, subd. 1 (explicitly preserving a defense of judicial immunity). That is, unless a judge acts entirely without jurisdiction, state law claims brought against them in federal court are subject to dismissal based on these Minnesota state judicial immunity principles. Those principles protect the Judicial Defendants here for the same reasons federal immunity applies to Welsh's § 1983 claims. The Court will, therefore, also dismiss the Complaint's state law claims against the Judicial Defendants.

## III.    Prosecutorial Immunity

Welsh asserts various claims against Michael J. Groh and Alexander G. McDonald, both assistant county attorneys for Scott County who prosecuted Welsh's state criminal case. Welsh alleges that Groh approved the criminal complaint and participated in early stages of her prosecution, while McDonald later handled court appearances, engaged in

plea discussions, and ultimately dismissed the charges. (*See, e.g.*, Compl. ¶¶ 14–15, 47, 101–11, 146–49.) Broadly speaking, Welsh claims that Groh and McDonald pursued charges without probable cause (Count III), withheld exculpatory evidence (Count V), infringed on Welsh's right to a speedy trial (Count VI), conspired with others to push Welsh's prosecution and conceal wrongdoing (Count VIII), and engaged in deceptive or coercive plea conduct (Count XI).

Absolute prosecutorial immunity bars civil damages claims against prosecutors for acts undertaken in their role as advocates in the judicial phase of the criminal process. *See, e.g.*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Under this immunity, prosecutors are immune from damages liability under § 1983 for initiating a prosecution, presenting the State's case, and exercising professional judgment in conducting criminal proceedings. This remains true even when a plaintiff alleges that the prosecutor acted maliciously, dishonestly, or unlawfully. *See, e.g.*, *id.* at 270 (noting "rule of absolute immunity for conduct of prosecutors that was 'intimately associated with the judicial phase of the criminal process'" (quoting citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). By contrast, prosecutors do not receive absolute immunity for conduct that is investigative in nature. *See, e.g.*, *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997).

The conduct that Welsh attributes to Groh and McDonald was protected, advocacy conduct. Welsh's allegations concern decisions to initiate charges, approve charging documents, litigate a pending prosecution, negotiate a plea resolution, address

scheduling matters, and decide to dismiss a prosecution.  All of this is "intimately associated with the judicial phase of the criminal process" and is, therefore, shielded by absolute immunity from damages liability.  *Buckley*, 509 U.S. at 269.  To the extent Welsh seeks damages from Groh and McDonald, prosecutorial immunity bars those claims and the Court will dismiss them with prejudice.

"[A]bsolute prosecutorial immunity does not extend to actions for declaratory and injunctive relief."  *Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs*, 508 F. Supp. 3d 486, 513 (D. Minn. 2020).  But to the extent the Complaint purports to seek such relief against Groh and McDonald, the Court will dismiss the claims because Welsh lacks standing for standing for injunctive relief and the actual controversy required for declaratory relief.

## A.    Injunctive Relief

With respect to injunctive relief, Welsh lacks Article III standing to obtain prospective equitable relief against assistant county attorneys based on a concluded prosecution.[8]  To show standing, a plaintiff must plausibly allege (1) a "concrete and particularized" "injury in fact" that is "actual or imminent" ("not conjectural or hypothetical"); (2) a "causal connection" showing the injury is "fairly traceable" to the defendant's challenged conduct; and (3) a likelihood (not mere speculation) that "the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

---

[8] Plaintiffs must show standing for each claim that they assert and for each sort of remedy requested.  *See, e.g.*, *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008).

560–61 (1992) (cleaned up).  Nothing in the Complaint suggests that any reintroduction of the dismissed charges against Welsh is likely.  As a result, Welsh's request to enjoin refiling of charges rests on speculation about a hypothetical future prosecution.  Welsh has failed to establish standing for injunctive relief.

### B.      Declaratory Relief

As for declaratory relief, the Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  That is, requests for declaratory judgments require an "actual controversy" grounded in present, concrete legal relations.  In other words, the Act is not aimed at issuing retrospective pronouncements that past conduct was unlawful. *See, e.g.*, *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1284 (11th Cir. 2012) (stating that declaration that defendants violated plaintiff's rights in the past "would [be] nothing more than a gratuitous comment without any force or effect" (quoting *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)), *abrogated on other grounds by EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015).  To the extent Welsh's requested declarations would target Groh and McDonald, they would address only past conduct in a dismissed prosecution.  Because Welsh's

10

declaratory relief against Groh and McDonald would not adjudicate any present controversy, Welsh fails to state a claim on which relief can be granted.

*     *     *

Welsh cannot pursue her federal law claims against Groh and McDonald. To the extent she is asserting her Minnesota tort claims against Groh and McDonald, those claims are barred by Minnesota's absolute prosecutorial immunity, which protects prosecutors from civil liability for acts undertaken in their prosecutorial role. *See, e.g.*, *Stresemann v. Jesson*, 868 N.W.2d 32, 34 (Minn. 2015). And this protection applies even where a plaintiff alleges "improper motive" or "lack of probable cause." *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 213 (Minn. 1981).

The Court will, therefore, dismiss all of Welsh's claims against Groh and McDonald and will dismiss Groh and McDonald from this action.

## IV.    Claims Against Public Defender

Welsh asserts various § 1983 claims against Andrew Lawrence Harris, her public defender in the underlying state criminal case. (*See* Compl. at 34, 37.) A threshold requirement for § 1983 liability is that the relevant defendant acted "under color of" state law. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 48 (1988); *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014). A public defender generally does not act under color of state law when performing traditional defense counsel functions in a criminal case, because the defender's professional obligations run to the client and the defender acts as the

11

State's adversary.  *See, e.g.*, *West*, 487 U.S. at 50; *see also, e.g.*, *Holbird v. Armstrong-Wright*, 949 F.2d 1019, 1020 (8th Cir. 1991).

The conduct that the Complaint attributes to Harris (e.g., advising Welsh about motions, refusing to pursue certain arguments, handling discovery, and participating in plea negotiations) falls within the ordinary scope of criminal defendant representation. Even if Welsh believes Harris's choices were incompetent, unethical, or harmful to her interests, they remain defense-counsel conduct that is not actionable "state action" under § 1983.[9]  The Court will, therefore, dismiss Welsh's § 1983 claims against Harris for failure to state a claim.

The only state law claim Welsh mentions that might apply to Harris is her IIED claim.  But Welsh has not stated an IIED claim against Harris.  The Complaint does not allege facts that show either "extreme and outrageous" conduct (as Minnesota law uses that term) or "severe" distress attributable to Harris.  *See, e.g.*, *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn. 1983) (discussing requirements for pleading IIED claim under Minnesota law).

---

[9] The Complaint does suggest that Harris conspired with prosecutors and judges.  Courts can treat a private party as acting under color of state law if the party willfully participated in a joint plan with state officials to deprive someone of federal rights.  *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982) (discussing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970)); *Magee*, 747 F.3d at 535.  But as noted above (*see* note 7), such conspiracy allegations must be supported by specific factual content showing an agreement to violate the plaintiff's rights.  Here, the Complaint does not plead concrete facts plausibly showing that Harris reached an understanding with any state officials to deprive Welsh of her rights.  As a result, Harris remains a nonstate actor for § 1983 purposes.

Accordingly, the Court will dismiss all of Welsh's claims against Harris and will dismiss Harris from this action.

## V.    Claims Against Scott County Sheriff's Office and Shakopee Police Department

Welsh's federal law claims against the Scott County Sheriff's Office and the Shakopee Police Department will be dismissed because sheriff's offices and police departments are not separate "persons" or juridical entities capable of being sued under 42 U.S.C. § 1983; they are simply arms or subdivisions of the relevant county or city. *See, e.g.*, *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992).  The Complaint also names Scott County and the City of Shakopee as defendants, making any claims against the municipal subunits redundant.

The same result follows under Minnesota law for Welsh's state law claims.  Under Minnesota law, capacity to sue or be sued lies with the county itself, not with internal county departments.  Minnesota statutes expressly provide that "[e]ach county is a body politic and corporate" and may "[s]ue and be sued."  Minn. Stat. § 373.01, subd. 1(a)(1).  Minnesota appellate courts likewise recognize that county sheriff's departments and city police departments are not distinct legal entities subject to suit.  *See, e.g.*, *Maras v. City of Brainerd*, 502 N.W.2d 69, 79 (Minn. Ct. App. 1993).

The Court will, therefore, dismiss the Scott County Sheriff's Office and the Shakopee Police Department from this action.

**VI.      Municipal Entity Liability Under § 1983**

In Count XIII of the Complaint, Welsh purports to bring "*Monell* Claims" under 42 U.S.C. § 1983 against the City of Shakopee and Scott County.  (Compl. ¶¶ 287–289.) Under *Monell v. Department of Social Services*, municipalities and local government units are, unlike states, "persons" under § 1983.  436 U.S. 658 (1978).  *See, e.g.*, *Owen v. City of Indep.*, 445 U.S. 622, 624 (1980) (citing *Monell*).  But such entities cannot be held vicariously liable for their employees' conduct on a *respondeat superior* theory.  *See, e.g.*, *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Instead, a city or county may be liable only for its own acts.  *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. 658).

Generally speaking, to plead a municipal liability claim, a plaintiff must allege facts plausibly showing: (1) an official policy or decision by an official with final policymaking authority that caused the violation; (2) a widespread and persistent custom or practice so pervasive as to have the force of law that caused the violation; or (3) a failure to train or supervise that reflects deliberate indifference to constitutional rights and that caused the violation.  *See, e.g.*, *Connick*, 563 U.S. at 60–61.  A plaintiff also must plausibly allege a "direct causal link" between the relevant municipal action and the alleged constitutional injury.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *see also, e.g.*, *Ahmad v. City of St. Louis*, 995 F.3d 635, 642 (8th Cir. 2021).

Count XIII relies almost exclusively on boilerplate assertions that the City and County have unconstitutional policies or customs and have failed to train employees in

14

various ways.  (*See* Compl. ¶¶ 280–286.)  But Welsh pleads no concrete factual allegations supporting the existence of any identified policy, any widespread pattern of similar misconduct, or any municipal decision by a policymaker.  (*See id.*)  Instead, she essentially asks the Court to infer a municipal policy or training deficiency from the events alleged in her own case.  She also suggests that a "pattern" will be "discoverable through litigation." (*Id.*)  That assertion is not sufficient under *Twombly* and *Iqbal*.  *See Iqbal*, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The Court will, therefore, dismiss Count XIII under 28 U.S.C. § 1915(e)(2) for failure to state a claim.  Furthermore, to the extent Welsh has sued any City or County employees in their official capacities under § 1983, those claims amount to claims against those governmental entities themselves.  *See, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018).  Those official capacity claims fail for the same reason.  The Court will, thus, dismiss any official capacity claims against Defendants Perrier and Radde, employees of the Shakopee Police Department.[10]

---

[10] To be clear, the Court is dismissing any **§ 1983** municipal liability claims against the City. The Court is not dismissing the City with respect to municipal liability for Welsh's **state law** claims that will remain against Perrier and Radde.  (The claims that remain will be discussed further, below.)

Under Minnesota law, unlike § 1983, a municipality or county may be vicariously liable for torts its officers or employees commit within the scope of their employment, subject to various exceptions.  *See, e.g.*, *Jepsen ex rel. Dean v. Cnty. of Pope*, 966 N.W.2d 472, 488 (Minn. 2021).

## VII.    Denial of Access Claim

Welsh also asserts that various unidentified "Court Reporters," an unspecified "Court Administration," and "John Does" have interfered with her right of access to the courts (in violation of the First and Fourteenth Amendments).  (Compl. ¶¶ 258–264 (Count IX).)    Welsh claims to have requested certain transcripts after her state prosecution's dismissal but states that the "court reporters" refused to provide them unless Welsh pays for them.  (*See id.*)  This refusal, Welsh argues, is a violation of her Constitutional rights.  (*Id.*)

Welsh's Complaint does not properly plead a denial-of-access claim.  To plead such a claim, a plaintiff must allege (among other things) "actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."  *White v. Katuzky*, 494 F.3d 677, 680 (8th Cir. 2007).  Nothing here suggests any hindrance to a nonfrivolous legal claim.  Welsh has already accessed the courts by filing this very action, so she has not been prevented from bringing or maintaining any claims.  Because any actual injury here is speculative, the Court will dismiss Count IX for failure to state a claim.

## VIII.    Remaining Claims

After dismissing the claims and Defendants identified above, only the City of Shakopee and Perrier and Radde, police officers and employees of the City of Shakopee, will remain as Defendants.  The City of Shakopee remains a Defendant solely for consideration of its potential vicarious liability for any state law violations by Perrier and Radde.  The only counts of the Complaint that will remain are Counts I–IV, VIII, X, XII, and

XIV.  For each of these Counts, Welsh's only remaining claims are against Perrier, Radde, and the City of Shakopee.

## CONCLUSION

Because Welsh has stated claims upon which relief could potentially be granted, the Court will allow those claims to proceed and will grant Welsh's IFP Application.  Given this determination, the Court will also order certain steps to initiate service in this matter.

The Court will dismiss certain claims and Defendants without prejudice.  A dismissal without prejudice means that Welsh may refile these claims, but for these claims to survive upon refiling, Welsh must fix the deficiencies and defects in her claims that were noted in this Order.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff Katie Sue Welsh's Complaint for Damages and Injunctive Relief Pursuant to 42 U.S.C. § 1983 (Docket No. 1 ("Complaint")) is **DISMISSED WITH PREJUDICE**, under 28 U.S.C. § 1915(e)(2), to the extent it brings claims against Defendants Paula Duggan Vraa, Colleen G. King, Charles Webber, Caroline H. Lennon, Michael J. Groh, Alexander G. McDonald, Andrew Lawrence Harris, Scott County Sheriff's Office, and the Shakopee Police Department.

17

2. The Complaint is **DISMISSED WITHOUT PREJUDICE**, under 28 U.S.C. § 1915(e)(2), to the extent it brings claims against Defendant Scott County, federal law claims against Defendant City of Shakopee, and official capacity claims against Defendants Seth Perrier and Fred Radde.

3. Count IX of the Complaint is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(e)(2).

4. Welsh's Application to Proceed *In Forma Pauperis* (Docket No. 2) is **GRANTED**.

5. Welsh must submit a properly completed Marshal Service Form (Form USM-285) for Defendants Seth Perrier, Fred Radde, and the City of Shakopee. If Welsh does not complete and return the Marshal Service Forms within 30 days of this Order's date, the Court will dismiss the remainder of this matter without prejudice for failure to prosecute. Marshal Service Forms will be provided to Welsh by the Court.

6. After the return of the completed Marshal Service Forms, the Clerk of Court is directed to seek waiver of service from Defendants Perrier and Radde (each as sued in their individual capacities), consistent with Rule 4(d) of the Federal Rules of Civil Procedure.

7. If a defendant sued in his individual capacity fails without good cause to sign and return a waiver within 30 days of the date that the waiver is mailed, the Court will impose upon that defendant the expenses later incurred in effecting

service of process.  Absent a showing of good cause, reimbursement of the costs of service is mandatory and will be imposed in all cases in which a defendant does not sign and return a waiver of service form.  *See* Fed. R. Civ. P. 4(d)(2).

8. After the return of the completed Marshal Service Forms, the U.S. Marshals Service is directed to effect service of process on the City of Shakopee consistent with Rule 4(j)(2) of the Federal Rules of Civil Procedure.

DATED: March 11, 2026                     _____/s/ John R. Tunheim_____
at Minneapolis, Minnesota.                        JOHN R. TUNHEIM
                                                  United States District Judge